IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WERNER SCHAEFER, et al.    :    CIVIL ACTION
                   :
        v.            :
                   :
HPB FOAM LLC, et al.     :    NO. 24-6298

MEMORANDUM

Bartle, J.                            July 8, 2025

Plaintiffs Werner Schaefer, Leah Schaefer, and Shepherd International Innovations, Inc. ("S3I") filed this lawsuit on November 25, 2024, against defendants HPB Foam LLC ("HPB Foam"), JEZ Investments LLC, Horsepower Nation LLC, SVHB Marketing LLC d/b/a Horsepower Brands, HPB Foam Holdings LLC, Joshua Skolnick, Zachery Beutler, and Anthony Hulbert.  Subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.[1]

The court has before it the motion of defendants to dismiss the first amended complaint and to award defendant HPB Foam contractual attorneys' fees (Doc. # 22).

The dispute arises out of a franchisor-franchisee relationship between plaintiffs and HPB Foam LLC involving spray "iFoam" insulation products and services for residential and commercial customers.  The plaintiffs, as the franchisees,

_____

1.  Plaintiffs are citizens of Texas.  All members of the limited liability company defendants as well as the individual defendants are citizens of Pennsylvania, New Jersey, or Nebraska.

allege defendants violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41, et seq. ("DTPA") (Count I)[2] and the Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 Pa. Stat. § 201-1, et seq. ("UTPCPL") (Count II). Plaintiffs further bring common law claims of fraud (Count III) and negligent misrepresentation (Count IV). Finally, plaintiff S3I asserts that defendant HPB Foam LLC breached the Franchise Agreements in issue and the implied covenants of good faith and fair dealing (Count V).

I

For present purposes, the court must accept as true all well-pleaded facts in plaintiffs' amended complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court may also consider "exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). When there is a document "integral to or explicitly relied upon in the complaint," it may

---

2.   Within this count, plaintiffs also aver that defendants violated the Texas Business Opportunity Act, Tex. Bus. & Com. Code § 51.001, et seq. ("TBOA"), which is meant to protect people against false and misleading statements in the advertising, sale, or lease of business opportunities. Tex. Bus. & Com. Code § 51.004(a)(1). The statute exempts franchises from the definition of a business opportunity. Id. at § 51.003(b)(6). The court will dismiss without further discussion any claim that defendants violated the TBOA.

also be considered as there is no concern of lack of notice to the plaintiff.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1993) (quotation marks omitted)).

A complaint must plead more than "labels and conclusions."  Twombly, 550 U.S. 545.  It must state more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555) (internal quotations and alterations omitted).  Instead, it must recite sufficient factual content to state a claim that is plausible on its face.  Id. at 678.

Fraud claims are subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  When alleging fraud, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Such claim must be sufficiently detailed to place defendant on notice of the "precise misconduct with which [it is] charged."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  Plaintiffs must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Id.

II

The well-pleaded facts as presented in plaintiffs'
amended complaint are as follows.

At the end of 2022, plaintiffs Leah and Werner
Schaefer spoke with Peter Gilfillan, a franchise consultant,
about the purchase of a franchise.  After reviewing a number of
possibilities with Gilfillan, the couple decided upon an iFoam
franchise because it was billed, in part, as a "semi-absentee"
business, a "business in a box" approach with "strong in-house
horizontal support," and did not require prior experience in the
construction or insulation industries.  iFoam is owned by HPB
Foam LLC.  JEZ Investments LLC is its parent company.
HorsePower Nation LLC, an affiliate of HPB Foam LLC, provides
franchise consulting services to franchisees; SVHB Marketing
LLC, another affiliate, provides franchise administration
services; and HPB Foam Holdings LLC owns the trademark for HPB
Foam LLC and its confidential information, copyrights, and
intellectual property.  Joshua Skolnick and Zachery Beutler are
founding members of HPB Foam LLC while Anthony Hulbert is its
Chief Executive Officer.

On January 18, 2023, Werner Schaefer spoke by
telephone with Steve Reppert, the Director of Franchise
Development for HPB Foam LLC.  During this call, they reviewed
an introductory PowerPoint which outlined the expected

investment and earnings.  Reppert followed up on January 25, 2023 with a "Unit Economics Workbook" which provided greater detail regarding the anticipated expenses and revenue of an iFoam franchise.  He also provided the Schaefers with a link to download HPB Foam LLC's Franchise Disclosure Document ("FDD"). The document accessed by plaintiffs was dated January 14, 2022 as amended on April 11, 2022.  An FDD is a "prospectus type" document which outlines important information for prospective franchisees such as the nature of the franchise, the franchisor's owners, any litigation involving the franchisor, the existence and location of franchises, and estimated costs and financial performance of a franchise.  The Federal Trade Commission identifies what information must be included.

Plaintiffs aver that Items 7, 8, and 19 of the FDD contained material misrepresentations and that HPB Foam LLC did not timely update the FDD with complete and accurate information.

In Item 7, a franchisor must disclose the estimated total initial investment a franchisee must make in the opportunity, which includes the initial fee, expenses, real property, and any additional funds required for the first three months of operation.  Plaintiffs aver that the figures listed "dramatically understated" the total initial investment required as it did not include the costs for purchases of a second spray

rig, which plaintiffs assert is necessary, as well as understating vehicle costs.  Further, the total presented was the total estimated initial investment for one territory, which plaintiffs identify as a "bait and switch" tactic as "no iFoam franchisee ever purchased and operated just a single territory" and on average, an iFoam franchisee managed three territories.

Item 8 requires a franchisor to disclose whether the franchisor or its affiliates "will or may derive revenue or other material consideration from required purchases or leases by franchisees."  If such compensation is received, the franchisor must identify the amount earned from such required payments.  16 C.F.R. § 436.5(h)(6).  The FDD provided to plaintiffs represented that while HPB Foam LLC and its affiliates may derive such revenues, they "have not derived any revenues on account of required franchisee purchases or leases . . . ."  Plaintiffs assert, however, that at the time the FDD was provided to them, this statement was false and that HPB Foam LLC and its affiliates derived revenues from required purchases or leases by franchisees.

Any representations regarding a franchisee's anticipated financial performance must be contained within Item 19, and these representations must have a reasonable basis.  16 C.F.R. § 436.5(s)(3).  The franchisor must also identify whether the representations utilize historical performance data or are

projections.  Item 19 of HPB Foam LLC's FDD presented revenues
and expenses for two "outlets."  These outlets, according to
plaintiffs, provided different services and used different
equipment than the iFoam franchises purchased by plaintiffs.
Further, each "outlet" contained multiple territories, and the
financial figures presented lacked material expenses such as
royalty fees and failed to disclose other expenses incurred by
these outlets.

The Schaefers spent the next couple of months learning
more about HPB Foam LLC and its franchising opportunities.
Plaintiffs viewed promotional videos produced by HPB Foam LLC in
which Zachery Beutler, founding member of HPB Foam LLC, and
Anthony Hulbert, CEO of HPB Foam LLC, promised strong training
infrastructure and discussed in detail the FDD.  The Schaefers
also attended a "Discovery Day" in Nebraska on February 16 and
17, 2023.  During that event, defendants Beutler, Hulbert, and
Skolnick "verbally promised" growth, support, and success of the
iFoam system directly to the Schaefers.

On March 2, 2023, the Schaefers entered into separate
Franchise Agreements with HPB Foam LLC to operate each of five
iFoam franchises in the North Houston, Texas area.  Skolnick and
Beutler signed on behalf of HPB Foam LLC.  Werner Schaefer and
Leah Schaefer signed as the franchisees.  Pursuant to §§ 1.1 and
1.2 of the Franchise Agreements, the Schaefers were granted non-

exclusive license to establish and operate their franchises under certain rules and limitations in the referenced protected territories and to use the Franchisor's "System and Proprietary Marks."

Under the Franchise Agreements, the franchisor shall provide the franchisees with a call center, through which requests for iFoam services are routed and assigned to various franchises (Franchise Agreement at §§ 1.7.1, 6.6), digital marketing and website management (id. at §§ 3.9-10), book-keeping and payroll (id. at § 3.20), an operations manual (id. at § 6.1), and a list of supplies required, ongoing assistance, and remedial support as necessary (id. at §§ 6.2-5).

In exchange, the franchisees are required to pay an initial franchise fee of $194,500 as well as minimum weekly royalty fees for the ten year life of the Franchise Agreements. Id. at § 3.2.  After the first year, the franchisees must pay, at minimum, an aggregate weekly royalty fee based on the five territories they purchased and the number of months these businesses have been in operation:

- Months 13-24: $2,452
- Months 25-36: $3,351
- Months 37-48: $4,168; and
- Months 49-60+: $4,986.

-8-

The Franchise Agreements provide that they shall be governed and controlled by Pennsylvania law without regard to its conflict of laws principles.  Id. at § 18.1.  Section 22.4 of the Franchise Agreements, however, carves out an exception:

> If any provision of this Agreement, including but not limited to its provisions for transfer, renewal, termination, notice of termination, or cure rights, is inconsistent with any valid law or regulation of the state in which the Franchised Business is located, then the valid law or regulation of that state applicable to the Franchised Business shall supersede any provision of this Agreement that is less favorable to Franchisee.

The state in which the Franchised Business is located is Texas.

The Franchise Agreements also contain a limitations period:

> [N]o cause of action arising out of or under this Agreement may be maintained by Franchisee against Franchisor unless brought before the expiration of one (1) year after the act, transaction or occurrence upon which such action is based or the expiration of one (1) year after the Franchisee becomes aware of facts or circumstances reasonably indicating that Franchisee may have a claim against Franchisor hereunder, whichever occurs sooner, and that any action not brought within this period shall be barred as a claim, counterclaim, defense, or set-off.

Id. at § 18.9.

Each Franchise Agreement provides that plaintiffs disclaim reliance on any prior oral and written representations that were not contained in the Agreements or in the FDD:

> This Agreement contains the entire agreement
> of the parties.  There are no
> representations either oral or written,
> except those contained in this Agreement.
> This Written Agreement includes all
> representations between the parties. . . .
> Nothing in this Agreement or any related
> agreement is intended to disclaim the
> representations Franchisor made in the
> franchise disclosure document furnished to
> Franchisee.

Id. at § 22.1.  The Agreements broadly protect individuals
associated with HPB Foam, Inc. from liability.  They state that
"none of Franchisor's agents, representatives, nor any
individuals associated with Franchisor's franchise company shall
be personally liable to Franchisee for any reason."  Id. at
§ 23.4.

Each Franchise Agreement contains an assignment
provision.  It stipulates that "[a]ny sale, transfer, assignment
or encumbrance made without Franchisor's prior written consent
shall be voidable at Franchisor's option and shall subject this
Agreement to termination as specified herein."  Id. at §§ 14.1,
14.3.2.7.  If an individual wishes to assign its rights to a
corporation or limited liability company that is newly organized
and that the then-current franchisees own at least 51% of the
Franchise Agreements state that the franchisee will be exempt
from paying a transfer fee and the transaction will not be
subject to HBP Foam's right of first refusal.  See id. at
§ 14.4; see also id. at § 14.3.2.7.  The Franchise Agreements

-10-

nonetheless require all stockholders of the corporation or
members of the limited liability company to assume all of the
franchisees' obligations under the Agreements, to execute
"Franchisor's prescribed form of personal guaranty," and upon
franchisor's request, furnish documents and contracts governing
the rights of franchisee's owners or agents, such as articles of
incorporation.  Id. at §§ 14.4.3-5.

        Finally, the Franchise Agreements allow for recovery
of attorneys' fees by the franchisor under certain
circumstances:

> If Franchisee institutes any legal action to
> interpret or enforce the terms of this
> Agreement, and Franchisee's claim in such
> action is denied or the action is dismissed,
> Franchisor is entitled to recover
> Franchisor's reasonable attorneys' fees, and
> all other reasonable costs and expenses
> incurred in defending against same, and to
> have such an amount awarded as part of the
> judgment in the proceeding.

Id. at § 22.8.

        On March 23, 2023, several weeks after the Franchise
Agreement were signed, the parties executed an "Assignment and
Consent to Transfer" ("Assignment") to effectuate the transfer
of the Schaefers' ownership in the franchises to S3I, a
corporation they owned.  The Assignment was signed by the
Schaefers, S3I, and HPB Foam LLC.  Anthony Hulbert signed on
behalf of HPB Foam LLC, Werner Schaefer signed as Director of
S3I and Leah Schaefer as its President.  In return for the

-11-

franchisor's consent, the Schaefers agreed to sign a personal

guarantee.  See Exhibit A to the Assignment.

        The Assignment includes a general release, which

reads:

> Upon execution of this Agreement, Assignor
> [the Schaefers] and Assignee [S3I], for
> themselves and all persons and entities
> claiming by, through or under any of them,
> hereby release, acquit, and forever
> discharge Franchisor [HPB] and its present
> and former officers, employees, members,
> directors, agents, servants,
> representatives, affiliates, franchisees,
> licensees, successors and assigns (the
> "Franchisor Releasees") from all
> obligations, claims, debts, demands,
> covenants, contracts, promises, agreements,
> liabilities, costs, attorneys' fees, actions
> or causes of action whatsoever, whether
> known or unknown, which Assignor, by
> themselves or on behalf of, or in
> conjunction with any other person, persons,
> partnership or corporation, have, had, or
> might claim to have against the Franchisor
> Releasees through the date of this
> Agreement, including those arising out of or
> related to: (i) the offer, sale, and
> transfer of the franchise rights granted
> under the Franchise Agreement; and (ii) any
> and all rights, obligations or claims under
> any state franchise regulations or franchise
> relationship laws.

Assignment, at ¶ 6 (emphasis added).  The Assignment states that

Pennsylvania law shall control, even in the event of any

conflict of law, and that it "shall constitute the entire

integrated agreement between the parties with respect to the

subject matter contained herein . . ."  Id. at ¶¶ 8, 10.

The Assignment adds:

> In the event that it becomes necessary for
> Franchisor to retain the services of legal
> counsel to enforce the terms of this
> Agreement against any other party hereto and
> Franchisor prevails, then Franchisor shall
> be entitled to recover all costs and
> expenses, including reasonable attorneys'
> fees and expert/investigative fees, incurred
> in enforcing the terms of this Agreement
> from the breaching party hereunder.

Id. at ¶ 9.

S3I's iFoam franchised businesses opened on July 10, 2023.  According to plaintiffs, defendants represented that the iFoam franchise had income and financial projections that it did not, and that defendants used "deceptive practices in its marketing materials" which omitted important information regarding the opportunity's risks.  Plaintiffs also allege that defendants failed to disclose information which, if known, would have caused plaintiffs not to enter into the transaction. Defendants purportedly provided incorrect and unsubstantiated financial performance metrics for the iFoam franchises, understated the total initial investment, and failed to provide an updated FDD to plaintiffs.  With respect to the FDD, plaintiffs aver that the individual defendants were aware of and involved in its misrepresentations and omissions.

Plaintiffs further allege that after starting up their iFoam franchises, they did not receive "adequate initial and ongoing training and assistance," "adequate advertising and

-13-

marketing support and assistance," and did not receive an "adequate call center and website."  As of August 2023, HPB Foam LLC had also approved a warehouse of another iFoam franchise, iFoam of Cypress, Texas, in the same zip code in which plaintiffs had a license to operate their franchise.

S3I ultimately closed its iFoam businesses on September 30, 2024 allegedly due to HPB Foam LLC's contractual breaches and unfair dealings.

III

The defendants first argue that Count I should be dismissed because the Texas DTPA is inapplicable to the situation at hand.  The DTPA permits consumers to maintain an action when a defendant uses or employs "a false, misleading, or deceptive act or practice that is" specifically enumerated in § 17.46(b) and that the consumer relies on to his or her detriment.  To prevail, plaintiffs must show that: (1) they were consumers of defendants' goods or services; (2) defendants committed  a false, misleading, or deceptive act; and (3) the act was the "producing cause" of plaintiffs' damages.  Ramirez v. GEICO, 548 S.W.3d 761, 770 (Tex. App. 2018).

The DTPA contains a number of exemptions to its applicability.  The one on which defendants principally rely to avoid the grasp of the statute is found in § 17.49(g) which states:

-14-

> Nothing in this subchapter shall apply to a
> cause of action arising from a transaction,
> a project, or a set of transactions relating
> to the same project, involving total
> consideration by the consumer of more than
> $500,000, other than a cause of action
> involving a consumer's residence.

Tex. Bus. & Com. Code § 17.49(g).

Defendants contend that the Franchise Agreements involve total consideration by the franchisees of more than $500,000.  The purpose of the DTPA, they explain, is to provide relief for consumers in small transactions and to exclude large business transactions.  CrewFacilities.Com, LLC v. Humano, LLC, Civ. A. No. 23-909, 2024 WL993898, at *3 (W.D. Tex. Mar. 7, 2024).

According to the amended complaint and the Franchise Agreements, the Schaefers purchased five iFoam franchises contemporaneously on March 2, 2023.  They paid the franchisor $194,500 in franchise fees.  Additionally, the Franchise Agreements, which each had a term of ten years, required the Schaefers as the franchisees to make weekly minimum royalty fees.

Their weekly minimum royalty fees were to begin at $2,452 starting in month thirteen and steadily increase to $4,986 beginning in month forty-nine and continuing at this rate

to the end of the contracts.[3]  After multiplying the various
minimum weekly royalty fees by the number of weeks applicable,
the sum of these royalty fees that the franchisees were
obligated to pay HPB Foam LLC over the ten year life of the
Franchise Agreements comes to $2,009,310.  Adding the initial
$194,000 in franchise fees, the total consideration owed by the
franchisees in return for the franchises under the Franchise
Agreements was $2,203,310.

It is proper as done here to consolidate the numbers
for the five franchises.  The Schaefers had entered into "a set
of transactions relating to the same project."  See § 17.49(g);
Rhino Linings Corp. v. 2x2 P'ship, Ltd., Civ. A. No. 22-522,
2024 WL885117, at *11-12 (Tex. Ct. App. Mar. 1, 2024).
Moreover, the fact that the entire consideration was not due in
one lump sum at the outset or was never fully paid does not
change the analysis.  Id.  In short, the total consideration
exceeds $500,000.  Consequently, the exemption under § 17.49(g)
applies, and plaintiffs have no claims under the DTPA against
defendants.

The motion of defendants to dismiss plaintiffs' claim
under the Texas DTPA will be granted.

---

3.  The court assumes that for the franchises' first year of
operation, plaintiffs would not have paid royalty fees because
their gross revenue would have been zero.

IV

Defendants next contend that plaintiffs' claim
pursuant to the Pennsylvania UTPCPL (Count II) should be
dismissed because plaintiffs do not meet the definition of a
person protected under § 201-9.2 of the statute.  The UTPCPL
has a private right of action which provides that:

> Any person who purchases or leases goods or
> services primarily for personal, family or
> household purposes and thereby suffers any
> ascertainable loss of money or property,
> real or personal, as a result of the use or
> employment by any person of a method, act or
> practice declared unlawful by section 3 of
> this act, may bring a private action to
> recover actual damages or one hundred
> dollars ($100), whichever is greater.

73 Pa. Stat. § 201-9.2 (emphasis added).

Plaintiffs allege that the Schaefers purchased the
franchises to "provide long-term financial stability and
security for their family and provide structured and manageable
work-life balance," rather than for a "business purpose."  They
maintain that the purpose of the purchase was personal.
Although the complaint does not limit this allegation to the
individual plaintiffs, it surely cannot mean to encompass
plaintiff S31, a corporation.

In support of their allegation, plaintiffs cite Levine
v. First American Title Insurance Co., in which the court
explained that the purchase of title insurance on a home
qualifies as a "household purpose."  682 F. Supp. 2d 442, 466

-17-

(E.D. Pa. 2010). They also point to <u>S. Kane & Son Profit
Sharing Trust v. Marine Midland Bank</u>, in which the court held
that the purchase of securities for trust beneficiaries in their
retirement, qualified as personal use under § 201-9.2(a). Civ.
A. No. 95-7058, 1996 WL 200603, at *3-4 (E.D. Pa. Apr. 25,
1996).

These cases are inapposite to the facts outlined in
the amended complaint and in the undisputed documents. It
defies plausibility to say that the purchase of five iFoam
franchises mandating royalty and other payments of over
$ 2,000,000 is the purchase of goods or services primarily for
personal, family, or household purposes. The motion of
defendants to dismiss plaintiffs' claim under the Pennsylvania
UTPCPL (Count II) will be granted.

V

Defendants except for HPB Foam LLC further argue that
Counts III and IV should be dismissed because plaintiffs fail to
meet the heightened pleading standard under Rule 9(b). That
Rule, as noted above, requires that "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud. . . ."

Plaintiffs identify specific misrepresentations and
omissions in Items 7, 8, and 19 of the FDD and allege that each
of the individuals took part in drafting it. For example, they

-18-

allege that the initial total investment was understated and
that the anticipated revenues and expenses outlined in Item 19
were misleading.  Further, they assert that each individual
defendant "verbally promised, among other things, growth,
support, and touted the success of the HPB Foam LLC and iFoam
system."  The Schaefers assert that they entered into these
Franchise Agreements in reliance on defendants' representations.

Significantly, plaintiffs quote statements of Hulbert
and Beutler on iFoam's financial successes from introductory
videos.  Although plaintiffs quote a more recent video, rather
than the ones seen by plaintiffs, they aver that the videos seen
by plaintiffs contained even "more glaring and material
misrepresentations."  Defendants cannot escape liability by
removing their informational videos from the Internet after
using them to mislead potential franchisees.  The court
understands plaintiffs to aver that these videos are similar to
ones currently posted and finds that plaintiffs have made
sufficiently particularized allegations regarding Beutler's and
Hulbert's participation in the fraud.  Plaintiffs also state
that they relied on the representations Skolnick made at the
"Discovery Day," where they attended presentations by Skolnick,
Beutler, and Hulbert.

Plaintiffs have met the requirement of Rule 9(b) as to
the individual defendants.  They are on notice as to the

-19-

misconduct alleged with the precision required.  See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Plaintiffs, on the other hand, fail to set forth any factual allegations regarding the conduct of defendants JEZ Investments LLC, Horsepower Nation LLC, SVHB Marketing LLC, and HPB Foam Holdings, LLC.  There is nothing pleaded as to these defendants' participation in any misrepresentations beyond merely stating that these entities are HPB Foam LLC's parent or affiliate companies.  This is clearly insufficient under Rule 9(b).  The amended complaint does not even meet the plausibility standard as to these defendants under Rule 8 and Iqbal and Twombly.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Plaintiffs' claims in Counts III and IV against defendants JEZ Investments LLC, Horsepower Nation LLC, SVHB Marketing LLC, and HPB Foam Holdings, LLC will be dismissed.

VI

Defendants HPB Foam LLC and the individual defendants seek dismissal of Count III and Count IV on the ground that the allegations do not satisfy the reasonable reliance element for fraud and negligent misrepresentation.  See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994); see also Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

Said defendants first argue that plaintiffs cannot reasonably rely on any of their representations not contained in

the Franchise Agreements or the FDD.  Section 22.1 of each
Franchise Agreement disclaims liability for any representations
"either oral or written, except those contained in this
Agreement.  This Written Agreement includes all representations
between the parties."  Each then narrows the disclaimer and
broadens the exception by stating that nothing is "intended to
disclaim the representations Franchisor made in the franchise
disclosure document furnished to Franchisee."  Id.

  Plaintiffs cite the Texas DTPA to argue that
defendants cannot waive their liability for misrepresentations
made outside of the FDD and the Franchise Agreements.  Section
17.42 of the DTPA provides that a consumer may not waive the
provisions of the DTPA absent certain exceptions that are not
present here.  The statute only bars the waiver of DTPA claims.
Sw. Bell Telephone Co. v. FDP Corp., 811 S.W.2d 572, 576–77
(Tex. 1991).  The waiver contained in the DTPA does not serve to
immunize defendants against plaintiffs' common law claims of
fraud and negligent misrepresentation.

  Plaintiffs allege in detail their reliance on
fraudulent oral statements as well as written misrepresentations
in the FDD.  Nonetheless, the language of § 22.1 of the
Franchise Agreements is clear.  It bars plaintiffs' claims
against HPB Foam LLC based on representations made outside of
the FDD and the Franchise Agreements.  For this reason, the

motion to dismiss Counts III and IV will be granted as to HPB Foam LLC to the extent that plaintiffs' claims rely on misrepresentations made outside of the FDD and the Franchise Agreements.

As noted above, plaintiffs also agreed in § 23.4 of the Franchise Agreements that the representatives and agents of HPB Foam LLC would not be personally liable to them for any reason.  Thus the motion of defendants Joshua Skolnick, Zachery Beutler, and Anthony Hulbert to dismiss Counts III and IV will be granted.

VII

Defendants assert two affirmative defenses to support their motion to dismiss pursuant to Rule 12(b)(6).  A defense must be apparent on the face of the complaint or must be based on relevant undisputed documents or matters of public record. See Pension Benefit Guar. Corp., 998 F.2d at 1196.

First, defendants argue that plaintiffs fail to state a claim in Count III asserting fraud and a claim in Count IV asserting negligent misrepresentation because the release contained in the Assignment contains a release of these claims.

The release in the Assignment is very broad.  The plaintiffs release the franchisor, HPB Foam LLC, its present and past officers, employees, and affiliates, among others, from all

-22-

claims whether known or unknown through the date of the
Assignment that plaintiffs:

> [H]ave, had, or might claim to have against
> the Franchisor Releasees through the date of
> this Agreement, including those arising out
> of or related to: (i) the offer, sale, and
> transfer of the franchise rights granted
> under the Franchise Agreement; and (ii) any
> and all rights, obligations or claims under
> any state franchise regulations or franchise
> relationship laws.

Assignment, at ¶ 6 (emphasis added).  The Assignment provides
that the agreement "shall be governed by the laws of the
Commonwealth of Pennsylvania, which laws shall control in the
event of any conflict of law" and that it "shall constitute the
entire integrated agreement between the parties with respect to
the subject matter contained herein . . ."  Id. at ¶¶ 8, 10.

     In Pennsylvania, a signed release is a contract and
construed as contracts are construed.  The court looks to the
words of the release to determine the intent of the parties.
Only those matters which can be said fairly to be within the
contemplation of the parties are covered.  Farrell v. Lechmanik,
Inc., 611 A.2d 1322, 1323-33 (Pa. Super. Ct. 1992).  However
improvident it may be, the release stands, in the absence of
fraud, accident or mutual mistake with respect to the release.
Buttermore v. Aliquippa Hosp., 561 A.2d 733, 735 (Pa. 1989).
None of these three exceptions is alleged here.

Plaintiffs first counter that there was no consideration for the release.  Consideration is "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made."  Stelmack v. Glen Alden Coal Co., 14 A.2d 127, 128 (Pa. 1940).  Such consideration must be bargained for.  The "detriment incurred must be the 'quid pro quo,' or the 'price' of the promise, and the inducement for which it was made."  Glover v. Junior, 333 A.3d 323, 340 (Pa. 2025).

The Assignment clearly provides bargained-for mutual obligations on the part of both HPB Foam LLC and the individual plaintiffs.  The Franchise Agreements required the consent of HPB Foam LLC if the franchises were transferred to another party but only if the individual plaintiffs met certain conditions.  In return for the consent, individual plaintiffs had to sign a personal guaranty as well as the release.  Plaintiffs' argument that the Assignment lacks consideration is without merit.

The release bars claims known and unknown that plaintiffs "have, had, or might claim to have against the Franchisor Releasees through the date of this Agreement," that is through March 23, 2023.  Plaintiffs argue that their fraud and negligent misrepresentation claims were not known and could not reasonably have been known at the time the release was signed and therefore those claims are not encompassed within the terms of the release.  In Pennsylvania, any fraud claim does not

accrue until the facts of the fraud and its causes are known or
should reasonably have been known by the victim through due
diligence.  Fine v. Checcio, 870 A.2d 850, 858-59 (Pa. 2005).
Fraud, for present purposes, includes not only intentional acts
but also unintentional deception and thus includes plaintiffs'
claims for negligent misrepresentation.  Id. at 860.  A claim
does not exist before it has accrued.  See Accrue, Black's Law
Dictionary (12th ed. 2024).  It is for the jury and not the
court to determine when accrual of a claim occurs.  Fine, 870
A.2d at 858 (citing Smith v. Bell Tel. Co. of Pa., 153 A.2d 477,
481 (Pa. 1959)).

 The use of the term unknown claims presupposes the
existence of those claims.  North America, for example, was
unknown to Western Europe for centuries, yet North America
existed.  The unknown claims do not encompass unaccrued claims
as the latter do not exist as claims.[4]

 Plaintiffs released any claims which were known to
them and those which were unknown to them but of which they
reasonably should have been aware.  The language to which the
parties agreed cannot be construed to constitute a release of
"claims" about which plaintiffs did not know and could not have

---

4.  The parties, of course, could have released unaccrued
claims or future claims but did not.  See Buttermore, 561 A.2d
at 734; see also Front St. Dev. Assocs., L.P. v. Conestoga Bank,
161 A.3d 302, 311-12 (Pa. Super. 2017).

reasonably known at the time the release was signed.  At that
point such claims had not accrued and thus had not come into
being.

The court cannot determine the time of accrual at this
early stage of the litigation.  When that event occurred must
await discovery and the finding of the jury.  The court will
deny defendants' motion to dismiss based on the release to the
extent that plaintiffs assert a claim of fraud or negligent
misrepresentation where they did not know of the underlying
facts and it was not reasonable for them to have known about
these facts through March 23, 2023.  All other remaining claims,
both known and unknown, in Counts III and IV that had accrued,
that is had existed, as of that date are released.

VIII

Defendant HPB Foam LLC maintains that Counts III and
IV fail to state a claim because they are barred by a one-year
limitations period in the Franchise Agreements.  The Franchise
Agreements executed by plaintiffs include in § 18.9:

> [N]o cause of action . . . arising out of or
> under this Agreement may be maintained by
> Franchisee against Franchisor unless brought
> before the expiration of one (1) year after
> the act, transaction or occurrence upon
> which such action is based or the expiration
> of one (1) year after the Franchisee becomes
> aware of facts or circumstances reasonably
> indicating that Franchisee may have a claim
> against Franchisor hereunder, whichever
> occurs sooner, and that any action not
> brought within this period shall be barred

as a claim, counterclaim, defense, or set-off.

The Franchise Agreements also provide that they "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without reference to its conflict of laws principals [sic]." Id. at § 18.1. Under Pennsylvania law, parties may agree in writing to a shorter limitations period than prescribed by statute if the shorter period is "not manifestly unreasonable." 42 Pa. Cons. Stat. § 5501(a). Plaintiffs, in response, cite Section 22.4 of the Franchise Agreements for the application of Texas law. That section reads:

> If any provision of this Agreement, including but not limited to its provisions for transfer, renewal, termination, notice of termination, or cure rights, is inconsistent with any valid law or regulation of the state in which the Franchised Business is located, then the valid law or regulation of that state applicable to the Franchised Business shall supersede any provision of this Agreement that is less favorable to Franchisee.

(emphasis added).

Texas law provides that people may not "enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years." Tex. Civ. Prac. & Rem. Code § 16.070(a). The shorter limitations periods set forth in the Franchise Agreements, even if permissible under

-27-

Pennsylvania law, are "inconsistent" with the valid law of
Texas, the state in which the franchised business is located.
As the Texas law is applicable without exception to all
agreements, it follows that it is applicable to those involving
franchises.  Furthermore, the shorter limitations periods in the
Franchise Agreements are less favorable to franchisees than
Texas law.  Thus, the Texas two-year limitations period
supersedes the one-year periods written into § 22.4 of the
Franchise Agreements.

       The court will deny the motion of HPB Foam LLC to
dismiss on the ground that the limitations periods in the
Franchise Agreements do not bar plaintiffs' remaining claims of
fraud and negligent misrepresentation in Counts III and IV.

                                IX

       Defendant HPB Foam LLC seeks to dismiss Count V in
which plaintiff S3I alleges breach of contract and the implied
covenant of good faith and fair dealing with respect to the
Franchise Agreements.  The court has considered the arguments of
defendant and finds them to be without merit.

       Defendant's motion to dismiss Count V will be denied.

                                X

       Finally, defendant HPB Foam LLC seeks attorneys' fees
and costs pursuant to Section 22.8 of the Franchise Agreements.
This section calls for the award of such fees and costs to the

Franchisor "if Franchisee institutes any legal action to interpret or enforce the terms of this Agreement, and Franchisee's claim in such action is denied or the action is dismissed . . . ."  The defendant's pending motion for attorneys' fees and costs is premature and will be denied without prejudice.